IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS EDWARD LEE | ) | |
|     Petitioner, | ) | Civil Action No. 14-143 Erie |
| | ) | |
| v. | ) | Chief District Judge Joy Flowers Conti |
| | ) | Magistrate Judge Susan Paradise Baxter |
| MARK CAPOZZA, et al., | ) | |
|     Respondents. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.    RECOMMENDATION**

It is respectfully recommended that the petition for a writ of habeas corpus filed by state prisoner Thomas Edward Lee ("Petitioner") pursuant to 28 U.S.C. § 2254 be denied and that a certificate of appealability be denied.

**II.    REPORT**

    **A.    Relevant Background**[1]

Petitioner's criminal case involved a robbery that occurred on June 17, 2011, at a CVS store located in Erie, Pennsylvania. Petitioner's trial was held before a jury in the Court of Common Pleas of Erie County on November 17, 2011. Laurie A. Mikielski, Esquire, was Petitioner's counsel.

At the trial, the sixteen-year-old employee who was stationed at the cash register during the robbery testified. The employee, who is identified in the state court opinions by only her initials "A.B.," stated that a man entered the CVS store at approximately 6:00 p.m. (Trial Tr. at 46). She greeted him

---

[1]     In addition to filing electronically certain relevant state court documents at ECF No. 12, Respondents have submitted a hardcopy of the documents that were filed in the Court of Common Pleas of Erie County in Petitioner's underlying criminal case, including the relevant transcripts.

1

and asked him if he needed any assistance. (Id. at 50). A.B. testified that the man stayed near her register in the front of the store and that during the entire time that he was there (about five minutes) he was within her sight. (Id. at 50-51, 53). A.B. stated that the man was wearing a baseball cap and sunglasses. (Id. at 52). After a short time, he approached her at her register and handed her some candy and a one dollar bill. (Id. at 48). As she opened the register, the man said to her: "give me all your cash." (Id.) A.B. testified:

> I started to get the cash out of my drawer but I guess I was being too slow, he was like, faster, faster. And then I looked – as he was talking to me, I would look at him. So I looked at him, he was … saying faster, faster, and I saw that he had a knife, and so I was trying to be faster.

(Id. at 49). A.B. stated that the man "had [the sharp edge of the knife] pointed toward me." (Id.) After she handed him the cash from her register (approximately $ 220.00), he told her that she was "a smart girl" and he left the store. (Id. at 49-50). He was not apprehended that day.

A.B. testified that she was able to see the robber's face and she made an in-court identification of Petitioner as the robber. (Id. at 51-52). A.B. also testified that several days after the robbery (and after Petitioner had been apprehended), the police showed her a photographic display that contained the pictures of eight different men.[2] She testified that she selected Petitioner's picture when the officer asked her to identify the man that robbed the CVS store. (Id. at 56-57).

---

[2] On June 24, 2011, Detective Christopher Lynch showed A.B. a photographic display that included Petitioner and seven other individuals who were of the same gender, race, age, and description. A.B. identified Petitioner as the man that robbed the CVS store. On September 28, 2011, Petitioner's trial counsel filed a motion to suppress A.B.'s identification on the grounds that it was tainted by a newspaper article that had been published two days before she identified him. The court scheduled a suppression hearing for November 3, 2011. The morning of the hearing, Petitioner's counsel filed an amended omnibus pre-trial motion asserting a violation of his right to counsel because, although counsel had been retained, she had not been informed that the police were going to show A.B. a photographic display. The suppression court held that the late-filed, amended suppression motion would not be considered because it was untimely. (11/3/11 Hr'g Tr. at 3). With respect to the timely-filed suppression motion, the trial court held, after hearing testimony from A.B. (who stated that she did not see the newspaper article with Petitioner's photograph), that there was no basis to support the suppression of A.B.'s identification from the lineup. (Id. at 10).

2

During A.B.'s testimony, the prosecution played the CVS store's surveillance video of the robbery. (Id. at 53-55). The state court summarized what the video showed, and also described the evidence introduced to explain how the police eventually apprehended Petitioner:

> At trial, the Commonwealth introduced a videotape of the robbery. It depicted a portion of [Petitioner's] face, his clothing and the knife.
> - - -
> Three days [after the robbery], on June 20, 2011, a police officer observed [Petitioner] entering a Country Fair store. The officer testified that [Petitioner] matched the description and photograph of the CVS store robbery suspect. The officer requested [Petitioner's] identification. [Petitioner] asked, and the officer granted, permission to buy coffee inside the store. The officer waited outside, called for a second officer, and watched [Petitioner] enter a restroom.
> The second officer arrived and saw [Petitioner] inside the store. That officer also testified that [Petitioner] matched the description and photograph of the robbery suspect. After [Petitioner] left the restroom and the store, the police arrested and transported him to the police station. The police recovered $220 in cash from [Petitioner]. Twenty to thirty minutes after arresting [Petitioner], the police returned to the Country Fair store to search for the knife used in the CVS robbery. Inside the garbage can of the restroom, and under a few paper towels, the police recovered a knife. The police prepared a photographic array, and A.B. immediately identified [Petitioner].

Commonwealth v. Lee, No. 1873 of 2011, slip op. at 1-2 (C.P. Erie Apr. 19, 2013) ("Lee II")[3] (bracketed text in state court decision) (quoting Commonwealth v. Lee, No. 208 WDA 2012, slip op. at 1-3 (Pa.Super.Ct. Dec. 20, 2012) ("Lee I")).[4]

The jury convicted Petitioner of one count each of robbery, theft by unlawful taking, and possessing an instrument of crime. The trial court sentenced him to a term of imprisonment. On December 20, 2012, the Superior Court of Pennsylvania issued a decision on Petitioner's direct appeal in which it affirmed his judgment of sentence. Lee I, No. 208 WDA 2012, slip op. at 1-9.

---

[3] Lee II is located on the court's docket at ECF No. 2-1 at 2-14.

[4] Lee I is located on the court's docket at ECF No. 12-7 at 1-9.

3

In June 2013, Petitioner filed a *pro se* motion for collateral relief pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 PA.CONS.STAT. § 9541 *et seq*. The PCRA court appointed William Hathaway, Esquire, to represent him and Hathaway filed a supplemental PCRA motion.

On April 19, 2013, the PCRA court determined that no hearing was required and it issued an opinion (Lee II) and a notice of its intent to dismiss Petitioner's request for relief. The court issued a final order denying PCRA relief on May 10, 2013.

Petitioner filed an appeal with the Superior Court and chose to proceed *pro se*. He filed a 33-page brief in which he raised 11 claims for relief. (ECF No. 12-15 at 1-49, Brief for Appellant, Commonwealth v. Lee, No. 894 WDA 2013 (Pa.Super.Ct. June 22, 2013)). Only three of those claims are relevant to this proceeding because they are the claims that he subsequently raised in the petition for a writ of habeas corpus that he filed with this court.

On February 24, 2014, the Superior Court issued an opinion in which it affirmed the PCRA court's decision in part and remanded for resentencing on a claim that is not at issue here. Commonwealth v. Lee, No. 894 WDA 2013, slip op. (Pa.Super.Ct. Feb. 24, 2014) ("Lee III").[5] The Superior Court denied on the merits the three claims at issue in this habeas case. Lee III, No. 894 WDA 2013, slip op. at 8-14.

Before this court is Petitioner's *pro se* petition for a writ of habeas corpus (ECF No. 2) and an accompanying memorandum of law (ECF No. 3-1 at 1-24). Therein, he raised three claims of ineffective assistance of trial counsel.[6] Specifically, he claimed that his trial counsel provided him with ineffective assistance in violation of his Sixth Amendment rights when she:

---

[5]     Lee III is located on this court's docket at ECF No. 2-1 at 16-38.

[6]     Petitioner submitted his petition on the standard form. Where he was asked to discuss a fourth claim for habeas relief (if he had one), Petitioner wrote the following very general statement: "violation of due process and equal protection of

*Continued on next page…*
4

– failed "to assert an objection on the record in specific regard to the process engaged by the trial court to determine the admissibility of the questionable knife evidence." (**Claim One** of the petition, ECF No. 2 at 5. See also memorandum of law, ECF No. 3-1 at 2-7).

– failed to file a timely motion to suppress A.B.'s identification of him on the grounds that his counsel was not present at the photographic display shown to A.B. (**Claim Two** of the petition, ECF No. 2 at 7. See also memorandum of law, ECF No. 3-1 at 7-8, 12-17).

– failed to request that the trial court instruct the jury that A.B.'s witness identification testimony be viewed with caution and could be disregarded. (**Claim Three** of the petition, ECF No. 2 at 8. See also memorandum of law, ECF No. 3-1 at 18-22).

Respondents filed an answer (ECF No. 12), to which Petitioner filed a reply (ECF Nos. 14, 33).[7]

---

the law/demanded by the Fifth and Fourteenth Amendments, and failure to strictly observe these constitutional safeguards renders trial and conviction for criminal offense illegal and void." In the section of the form where he was asked to provide the factual support for this claim, Petitioner only wrote: "See Ground Three (a) on page nine[,]" which is where he set forth the supporting facts for Claim Three. In Petitioner's brief, which he filed at the same time he filed his petition, Petitioner discussed only three claims and made no reference to a fourth claim. Therefore, Petitioner in fact is raising only three claims for habeas relief. If he is raising a fourth claim, it must be denied because the broad and non-specific statement he made when asked on the standard form to list his fourth claim is not sufficiently detailed to state a claim in a federal habeas proceeding. As the Supreme Court explained in Mayle v. Felix, 545 U.S. 644, 649 (2005):

> In ordinary civil proceedings, the governing Rule, Rule 8 of the Federal Rules of Civil Procedure, requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2). Rule 2(c) of the Rules Governing Habeas Corpus Cases requires a more detailed statement. The habeas rule instructs the petitioner to "specify all the grounds for relief available to [him]" and to "state the facts supporting each ground."

The Supreme Court also observed: "Notice pleading is not sufficient, for the petition is expected to state facts that point to a real possibility of constitutional error." Id. at 656 (emphasis added).

[7] Petitioner filed numerous documents with the court after Respondents filed their answer. In some of those documents, he argued that additional errors occurred at his trial or during other state court proceedings. A petitioner cannot raise new claims in a reply (formerly known as a traverse) or in other subsequent filings. The only claims before the court are the three claims that Petitioner raised in the petition and discussed in his brief. See Rule 2(c) of the Rules Governing Section 2254 Cases In the United States District Courts ("The petition must: (1) Specify **all the grounds for relief** available to the petitioner; (2) state the facts supporting each ground[.]") (emphasis added); Local Rule 2254.B.2.b (same); Paragraph 12 of standard form ("For this petition, state **every ground** on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States.") (emphasis added). See also Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994) ("A Traverse is not the proper pleading to raise additional grounds for relief.")

B.  **Discussion**

1.  **Standard of Review**

This case is governed by the federal habeas statute applicable to state prisoners, 28 U.S.C. § 2254. Under this statute, "[t]he Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Importantly, errors of state law are not cognizable. Id. See, e.g., Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Petitioner carries the burden of proving he is entitled to the writ. See, e.g., Cullen v. Pinholster, 563 U.S. 170, 131 S.Ct. 1388, 1398 (2011).

In describing the role of federal habeas proceedings, the Supreme Court observed:

> [I]t must be remembered that direct appeal is the primary avenue for review of a conviction or sentence.... The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited. Federal courts are not forums in which to relitigate state trials.

Barefoot v. Estelle, 463 U.S. 880, 887 (1983). Habeas corpus is a "'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (quoting Jackson v. Virginia, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in judgment)).

In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which amended § 2254. AEDPA imposes "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Pinholster, 131 S.Ct. at 1398 (internal quotation marks and citations omitted). Because the Superior Court denied on the merits the three claims at issue in this case, this court's review of those

6

claims is very limited. It is not for this court to decide whether the Superior Court's decision was right or wrong. Rather, under AEDPA's standard of review, which is codified at 28 U.S.C. § 2254(d), it is Petitioner's burden to show that the Superior Court's adjudication "resulted in a decision that was **contrary to, or involved an unreasonable application of**, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. §2254(d)(1) (emphasis added).[8]

The "clearly established Federal law," 28 U.S.C. § 2254(d)(1), in which to analyze each of Petitioner's claims is governed by Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, Petitioner must show that his trial counsel's representation fell below an objective standard of reasonableness. 466 U.S. at 688. The law presumes that Petitioner's trial counsel was effective. Id. at 689. Strickland also requires that Petitioner demonstrate that he was prejudiced by Petitioner's alleged deficient performance. This requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of [his trial] proceeding would have been different." Id. at 694. As the United States Court of Appeals for the Third Circuit explained:

> [The Petitioner] "need not show that counsel's deficient performance 'more likely than not altered the outcome of the case' – rather, he must show only 'a probability sufficient to undermine confidence in the outcome.'" Jacobs v. Horn, 395 F.3d 92, 105 (3d Cir. 2005) (quoting Strickland, 466 U.S. at 693-94). On the other hand, it is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Harrington, 131 S.Ct. at 787 (citing Strickland, 466 U.S. at 693). Counsel's errors must be "so serious as to deprive the defendant of a fair trial." Id. at 787-88 (citing Strickland, 466 U.S. at 687). The likelihood of a different result must be substantial, not just conceivable. Id.

---

[8] Section 2254(d)(2) provides the standard of review for questions of fact, and it permits habeas relief only if the petitioner demonstrated that the state court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). BRIAN R. MEANS, FEDERAL HABEAS MANUAL §§ 3:73-74, § 3:79, WestlawNext (database updated June 2015). None of the claims before this court involve an issue of fact. Therefore, § 2254(d)(2)'s standard of review does not apply to this case, notwithstanding Petitioner's argument that the Superior Court's adjudication of his claims resulted in an "unreasonable determination of the facts." In any event, if § 2254(d)(2) applied, Petitioner could not overcome it. The Superior Court's adjudication of each of his claims did not result "in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

7

Brown v. Wenerowicz, 663 F.3d 619, 630 (3d Cir. 2011).

The Supreme Court in Strickland also noted that although it discussed the performance component of an ineffective assistance claim prior to the prejudice component, there is no reason for an analysis to proceed in that order. 466 U.S. at 697. Consequently, if it is more efficient to dispose of a claim on the ground of lack of sufficient prejudice, that course can be followed. Id.

### 2. The Superior Court's Adjudication Was Not "Contrary To" Strickland

"The test for § 2254(d)(1)'s 'contrary to' clause is whether the state court decision 'applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result.'" Rountree v. Balicki, 640 F.3d 530, 537 (3d Cir. 2011) (quoting Brown v. Payton, 544 U.S. 133, 141 (2005), which cited Williams v. Taylor, 529 U.S. 362, 405 (2000) and Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)). The Superior Court applied the Strickland standard when it evaluated Petitioner's claims. Lee III, No. 894 WDA 2013, slip op. at 8.[9] Accordingly, its adjudication of each of Petitioner's claims withstands review under the "contrary to" clause of § 2254(d)(1). Williams, 529 U.S. at 406 ("a run-of-the mill state-court decision applying the correct legal rule from [Supreme Court] cases [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.")

Because Petitioner did not establish that the Superior Court's adjudication of any of his claims was "contrary to" Strickland, the only remaining inquiry for this court is whether Petitioner

---

[9] Pennsylvania law for judging ineffectiveness corresponds with the Strickland standard. Commonwealth v. Pierce, 527 A.2d 973, 976-77 (Pa. 1987); Commonwealth v. Kimball, 724 A.2d 326 (Pa. 1999). Although Pennsylvania courts typically articulate a three-prong test for gauging ineffective assistance claims and Strickland sets forth its test in two prongs, the legal evaluation is the same, and the differences merely reflect a stylistic choice on the part of state courts.

8

demonstrated that the Superior Court's adjudication of any of his claims was an "unreasonable application of" Strickland.

### 3. The Superior Court's Adjudication Was Not "An Unreasonable Application of" Strickland

"It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable [under the "unreasonable application" clause of § 2254(d)(1)]. If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." Harrington, 562 U.S. at 102. The Supreme Court instructed that § 2254(d)(1)'s "unreasonable application" clause:

> preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther…. **As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.**

Id. at 102-03 (emphasis added). The Supreme Court also instructed:

> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both "highly deferential," [Strickland, 466 U.S.] at 689; Lindh v. Murphy, 521 U.S. 320, 333, n.7 (1997), and when the two apply in tandem, review is "doubly" so, [Knowles v. Mirzayance, 556 U.S. 111, 123 (2009)]. The Strickland standard is a general one, so the range of reasonable applications is substantial. [Id.] Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). **When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.**

Id. at 105 (parallel citations omitted) (emphasis added).

9

### a. Claim One

Petitioner's first claim pertains to decisions the trial court made regarding the knife that the police recovered from the Country Fair store after Petitioner was arrested. At the trial, no one testified that the recovered knife was identical to the knife used in the CVS robbery. Lee I, No. 208 WDA 2012, slip op. at 3 (citing Trial Tr. at 152). The Superior Court explained on direct appeal that "[o]ut of the jury's presence, the following exchange transpired between the trial court and all counsel":

> The Court: . . .
> What I want to do is, I want to review the [surveillance] video tape because the Commonwealth wants the jury to be able to draw the inference that the weapon that was found, the knife that was found at the [store], is similar to the one that was used in the – in the alleged robbery. No one has really said that they're similar, neither the alleged victim, and actually Detective Lynch didn't go that far. At this point I had made a general statement to everyone that the inference could not be drawn.
> What I'm going to do now is, I'm going to view the tape itself, the video, because, as I said earlier, the jury is closer [to the television monitor] than I am, and I will look at the knife and then I'll make a decision whether or not the jury can draw that inference. If they can't, then I will give them an instruction as to what they can and cannot consider.
> So we'll just take a brief moment here. If you want to get the knife and you can bring it up here.
> (At which time [the surveillance video] was played.)
> The Court: All right. The Court has had a chance to review it, and I was very close up. The Court's observations are that the knife that is depicted in the video surveillance is very similar to the one that the police confiscated both in terms of size and even coloring. So I will be instructing the jury that they may consider the [knife]. It will be up to them to determine whether or not this is the knife that was used in the alleged robbery, but it is very, very similar and looks to the Court virtually identical. I paused that frame.
> No let's go off the record here.
> (Whereupon, discussion was held off the record.)
> The Court: I spoke to counsel, and what I'm going to do is this. Because I'm not sure the jury could see that, I don't want to have to play this for them in the jury room or send it back with them. We are going to freeze [the video] based on the Commonwealth's representation and then let the jury come up and make their own observations, and then that will be the end of it.

> Counsel, if you want to pose an objection as to the way I'm handling it, go ahead and put something on the record.
> [Petitioner's counsel]: No.
> The Court: Okay. I think there's been a sufficient predicate laid at this point for the jury to consider whether or not this is the actual weapon that was purportedly used.

Id. at 4-5 (quoting Trial Tr. at 4-5) (bracketed text in Superior Court's opinion).

Petitioner contends that his trial counsel was ineffective for failing "to assert an objection on the record in specific regard to the process engaged by the trial court to determine the admissibility of the questionable knife into evidence." (ECF No. 2 at 5). When it denied this claim, the Superior Court held that it did not need to determine whether trial counsel's performance was deficient because Petitioner did not establish that he was prejudiced by counsel's conduct. The Superior Court reached that conclusion after examining the strength of the other evidence the Commonwealth introduced to prove Petitioner's guilt. Lee III, No. 894 WDA 2013, slip op. at 9.

The Court of Appeals for the Third Circuit held that "[i]t is firmly established that a court must consider[,]" as the Superior Court did here, "the strength of the evidence in deciding whether the Strickland prejudice prong has been satisfied." Buehl v. Vaughn, 166 F.3d 163, 172 (3d Cir. 1999) (citing Strickland, 466 U.S. at 695). This is so because "[a] court simply cannot" "determine whether there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different[,]" "without considering the strength of the evidence against the accused." Id. Thus, the Superior Court properly looked to the strength of the other evidence introduced at Petitioner's trial in evaluating whether he was prejudiced by his counsel's handling of the matter at issue in Claim One. That other evidence included, *inter alia*, A.B.'s identification of him as the robber; the surveillance video of the robbery; Officer Rounds' testimony that he approached Petitioner at the Country Fair store because Petitioner looked like the man who robbed the CVS store, whose image had been captured in still

photographs taken from the CVS store's surveillance video; and, Officer Reynolds' testimony that when he saw Petitioner at the Country Fair, he also immediately recognized him as the robber pictured in the photographs taken from the surveillance video.

Based upon all of the foregoing, there is no basis for this court to conclude that the Superior Court's adjudication of Claim One "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103. Therefore, Petitioner failed to demonstrate that the Superior Court's adjudication of Claim One was an "unreasonable application of" Strickland.

### b. Claim Two

Petitioner contends that his trial counsel was ineffective for failing to file a timely motion to suppress A.B.'s identification on the ground that counsel was not present when the police showed A.B. the photographic display. A defendant has a right under Article I, Section 9 of the Pennsylvania Constitution to have counsel present when the police show photographs of the defendant and others to witnesses. Lee III, No. 894 WDA 2013, slip op. at 11 (citing Commonwealth v. Ferguson, 475 A.2d 810 (Pa.Super.Ct. 1984)). Importantly here, there is no corresponding federal constitutional right. United States v. Ash, 413 U.S. 300 (1973). WAYNE R. LAFAVE, ET AL., 2 CRIMINAL PROCEDURE § 7.3(c) (3d ed.), WestlawNext (database updated Dec. 2014).

When it reviewed Claim Two, the Superior Court held that Petitioner's state-law right to have counsel present at the photographic display was violated. It determined, however, that Petitioner was not prejudiced by counsel's failure to have A.B.'s *out-of-court* identification suppressed on that basis. It so held because it concluded that, even if the *out-of-court* identification had been suppressed, the trial court would have permitted the Commonwealth to introduce A.B.'s *in-court* identification. The Superior Court

12

noted that where a defendant's state law right to counsel is violated because counsel was not present when a witness is shown photographs, the witness will be permitted to make an *in-court* identification "as long as the Commonwealth shows that the identification had an independent origin." Lee III, No. 894 WDA 2013, slip op. 11 (citing Commonwealth v. Whiting, 266 A.2d 738, 740 (Pa. 1970)). It explained:

> The factors to be considered in determining whether the in-court identification testimony … was purged of any taint stemming from the police station confrontation are: (1) The witnesses' opportunity to observe the criminal act; (2) any discrepancy between pre-confrontation descriptions and the [defendant's] actual appearance; (3) any identification of anyone other than the [defendant]; (4) any failure to identify [defendant]; (5) the lapse of time between the robbery and the confrontation; (6) the witnesses' degree of attention; and, (7) the degree of certainty in identifying the [defendant].
>
> Commonwealth v. Ivy, 448 A.2d 553, 55 (Pa.Super. 1982).
>
> Instantly, A.B. had ample opportunity to observe [Petitioner] during the robbery. She testified that she observed [Petitioner] come into the store and bring three pieces of candy to her register. She rang up the purchase and [Petitioner] handed her a dollar bill. When she went to give him change, he told her to leave her drawer open and give her all of the money. She testified that [Petitioner] was in the store for about five minutes in total. Furthermore, A.B. positively identified [Petitioner] at both the suppression hearing and trial. Thus, we conclude that A.B.'s observation of [Petitioner] during the robbery itself was of independent origin and purged the unconstitutional photographic array identification of any taint. Accordingly, trial counsel was not ineffective for failing to raise this issue in a timely manner in the suppression motion, as [Petitioner] was not prejudiced by it.

Lee III, No. 894 WDA 2013, slip op. at 11-12.

This court is bound by the Superior Court's state-law determination that A.B.'s *in-court* identification would have been admissible even if Petitioner's trial counsel successfully had A.B.'s *out-of-court* identification suppressed.[10] See, e.g., Priester v. Vaughn, 382 F.3d 394, 401 (3d Cir. 2004)

---

10  If Petitioner's Sixth Amendment right to counsel had been violated, the same analysis would have applied to determine if A.B.'s in-court identification was admissible. See 2 CRIMINAL PROCEDURE § 7.3(f). However, since only
*Continued on next page…*

13

(federal habeas court cannot "reexamine state court determinations on state-law questions.") For that reason alone, this court cannot grant relief on Claim Two. In addition, Claim Two must be denied because there is no basis for this court to conclude that the Superior Court's adjudication of it "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103. Therefore, Petitioner failed to demonstrate that its rejection of Claim Two was an "unreasonable application of" Strickland.

### c. Claim Three

In his final claim, Petitioner contends that he received ineffective assistance because his trial counsel failed to request that the trial court give a cautionary jury instruction regarding A.B.'s identification of him pursuant to Commonwealth v. Kloiber, 106 A.2d 820 (Pa. 1954) and its progeny. In denying this claim, the Superior Court held:

> We now consider whether trial counsel was ineffective for failing to request a jury instruction pursuant to Commonwealth v. Kloiber, 106 A.2d 820 (Pa. 1954). [Petitioner's] Brief at 23-26. [Petitioner] relies on testimony A.B. provided at his preliminary hearing where she testified "that she was not able to view the robbery suspect other than the bottom part of his face and sideburns." Id. at 24.
>
> > A Kloiber charge instructs the jury that an eyewitness' identification should be viewed with caution where the eyewitness: (1) did not have an opportunity to clearly view the defendant; (2) equivocated on the identification of the defendant; or (3) had a problem making an identification in the past. However, identification testimony need not be received with caution where it is positive, unshaken, and not weakened by a prior failure to identify.
>
> Commonwealth v. Jones, 954 A.2d 1194, 1198 (Pa.Super. 2008) (citation and quotation marks omitted). It is clear that this claim is without merit, as the trial court gave an instruction consistent with Kloiber. The trial court instructed the jury as follows.

---

Petitioner's rights under the Pennsylvania Constitution were violated here, the issue of whether A.B.'s *in-court* identification would have been admissible is one only of state law.

> Now, this is a case of identification. I want to go through with you some special instructions on identification that may help you in assessing the case.
>
> In his testimony, or in her testimony, [A.B.] identified the defendant as the person who committed the crime. In evaluating her testimony, in addition to the other instructions I gave you for judging the testimony and credibility of witnesses, you should consider the following additional factors.
>
> First, did she have a good opportunity to observe the perpetrator of the offenses. Second, was there sufficient lighting for her to make her observations. Third, was she close enough to the individual to notice his facial and other physical characteristics as well as clothing he was wearing. Fourth, has she made a prior identification of the defendant as the perpetrator of the crimes. Fifth, was the identification positive or was it qualified by any hedging or inconsistencies. And lastly, did she identify anyone else during the course of the case as the perpetrator.
>
> In considering whether or not to accept her testimony you should consider all the circumstances under which her identification was made. Furthermore, you should consider all evidence relative to the question of who committed the crime including testimony of any witness from which identity, or nonidentity, of the perpetrator of the crime may be inferred.
>
> N.T., 11/17/2011, at 186-187. As this instruction is a more than adequate Kloiber instruction, we conclude [Petitioner] is not entitled to relief on this issue.

Lee III, No. 894 WDA 2013, slip op. 12-14.

The Superior Court's decision that Petitioner received an instruction sufficient to satisfy the requirements of Kloiber is another state law determination that is not subject to review by this court. See, e.g., Priester, 382 F.3d at 401. For that reason alone, Claim Three must be denied. Petitioner also argues that the jury should have been informed that A.B.'s identification of him was tainted because his counsel was not present when the police presented her with the photographic display. That argument is not persuasive. Petitioner did not establish that such an instruction was permissible under state law. He also did not demonstrate that, if the jury received such an instruction, there is a reasonable probability that the outcome of his trial would have been different. And, most importantly, Petitioner failed to

15

demonstrate that the Superior Court's adjudication of Claim Three "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103. Therefore, he did not establish that its rejection of Claim Three was an "unreasonable application of" Strickland.

* * *

In conclusion, Petitioner did not meet his burden of demonstrating that the Superior Court's adjudication of any of his claims "resulted in a decision that was **contrary to, or involved an unreasonable application of**" Strickland. Therefore, each claim must be denied.

### D. Certificate of Appealability

28 U.S.C. § 2253 governs the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition and it provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Applying that standard here, jurists of reason would not find it debatable whether each of Petitioner's claims should be denied. Accordingly, a certificate of appealability should be denied.

## III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the petition for a writ of habeas corpus be denied and that a certificate of appealability be denied.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the parties are allowed fourteen (14) days from the date of this Order to file

16

objections to this Report and Recommendation. Failure to do so will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

                                              /s/ Susan Paradise Baxter
                                              SUSAN PARADISE BAXTER
                                              United States Magistrate Judge

Dated: October 16, 2015

cc:      The Honorable Joy Flowers Conti
         Chief United States District Judge

         Notice to counsel of record by ECF and by U.S. Mail to Petitioner at his address of record